UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| LASHONDA M.,[1] | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:20-cv-00765-MJD-SEB |
| ANDREW M. SAUL Commissioner of Social Security, | ) | |
| Defendant. | ) | |

**ENTRY ON JUDICIAL REVIEW**

Claimant Lashonda M. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. See 42 U.S.C. §§ 423(d), 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB and SSI on August 19, 2016, alleging an onset of disability as of January 31, 2016. [Dkt. 12-2 at 16; Dkt. 12-5 at 3-13.] Claimant's application was denied initially and upon reconsideration, and a hearing was held before Administrative Law Judge

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

Kevin M. Walker ("ALJ") on December 13, 2018. [Dkt. 12-2 at 16-17.]. On February 14, 2019, ALJ Walker issued his determination that Claimant was not disabled. *Id.* at 28. The Appeals Council then denied Claimant's request for review on January 10, 2020. *Id.* at 2-4. Claimant timely filed her Complaint on March 10, 2020, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II. Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is not disabled. 20 C.F.R. § 404.1520. Before

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

2

continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

In reviewing Claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

An ALJ need not address every piece of evidence but must provide a "logical bridge" between the evidence and his conclusions. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether Claimant is disabled. *Id.*

### III. ALJ Decision

The ALJ first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of January 31, 2016. [Dkt. 12-2 at 19.] At step two, the ALJ found that Claimant had the following severe impairments: "mixed collagen vascular disease/mixed connective tissue disease/polyarthritis/fibromyalgia, degenerative disc disease, left carpal tunnel syndrome, chronic kidney disease, migraine headaches, hypertension, obesity, depression and anxiety." *Id*. (footnote omitted). At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 20. The ALJ then

3

found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform a range [of] sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: the claimant is capable of using the left upper extremity for frequent handling, fingering and feeling. The claimant's work must accommodate her use of a cane for ambulation[. T]he claimant is capable of occasionally balancing, stooping, kneeling, crouching, crawling and climbing of ramps or stairs but never climbing of . . . ladders, ropes or scaffolds. No more than moderate exposure [to] noise and no exposure to unprotected heights or hazardous machinery. She has the ability to perform moderately complex work that can be learned in 90 days or less and is able to sustain concentration and pace in a minimum of two (2) hour increments. The claimant is capable of responding appropriately to supervision and to coworkers in usual work situations and can deal with changes in a routine work setting that requires [sic] no more than occasional interaction with coworkers and the public.

*Id.* at 22.

At step four, the ALJ found that Claimant was not able to perform her past relevant work during the relevant time period. *Id*. at 26. At step five, the ALJ, relying on testimony from a vocational expert ("VE"), determined that Claimant was able to perform jobs that exist in significant numbers in the national economy, such as microfilm document preparer, dowel inspector, and weight tester. *Id*. at 28. Accordingly, the ALJ concluded Claimant was not disabled. *Id*.

## IV. Discussion

On appeal, Claimant has advanced a plethora of arguments regarding her claim that substantial evidence did not support the ALJ's decision.

### A. Pain and Symptoms

Claimant argues that the ALJ misapplied SSR-16 to his consideration of the intensity, persistence, and limiting effects of her pain and the impact of her pain on her ability to work. [Dkt. 16 at 18.] Specifically, Claimant argues that "[i]n his discussion of the factors of SSR 16-

4

3p, the ALJ only refers to the objective and clinical evidence of record to find [Claimant's] statements and assertions regarding her impairments to be inconsistent." *Id.* at 20. In response, the Commissioner argues that

> [i]n addition to discussing the objective medical evidence, the ALJ specifically discussed Plaintiff's treatment, such as medication for pain, depression, and anxiety, lack of medical side effects, physical therapy including aquatic therapy for physical symptoms, psychotherapy for mental symptoms, Plaintiff's work activity, and Plaintiff's daily living activities, which included personal care, child care, preparing small meals, cleaning, washing dishes, taking public transportation, shopping, watching television, reading, and going to church.

[Dkt. 17 at 10 (internal citations omitted).]

In determining whether an individual is disabled, an ALJ must consider all of the individual's symptoms, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record. S.S.R. 16-3p. Once an underlying impairment that could reasonably be expected to produce an individual's symptoms is established, an ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the Claimant's ability to perform work-related activities. *Id.* Among the factors an ALJ may consider in evaluating the credibility of an individual's symptoms are daily activities, nature of pain, and the use of medications or other treatments. *See* 20 C.F.R. § 404.1529(C)(3). The ALJ may not disregard a claimant's testimony about the persisting and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms a claimant alleges. S.S.R. 16-3p. Instead, the ALJ must resolve any "discrepancies between the objective evidence and self-reports." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010). An ALJ's decision regarding the claimant's credibility "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the

5

individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." S.S.R. 16-3p. Importantly, an ALJ must connect the evidence contained in the record to her conclusion regarding the intensity and persistence of the claimant's symptoms. Simple conclusory statements do not suffice.

On review, the ALJ's assessment generally warrants "special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).[3] A court, however, has "greater freedom to review credibility determinations based on objective factors . . . rather than subjective considerations." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005). If the ALJ's credibility determination does not build an accurate and logical bridge between the evidence and the result, the court cannot let it stand. *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) ("Although [the ALJ] determined that Ribaudo's complaints of pain were inconsistent with the objective medical evidence, he did not specify what objective medical evidence he was considering, nor is this clear from the record."). Thus, an ALJ must competently explain an adverse finding with specific reasons supported by the record. *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015).

Turning to the case at hand, the ALJ acknowledges that

> once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the

---

[3] The Court notes that while the ALJ no longer assesses the "credibility" of a claimant's statements, and instead focuses on the intensity and persistence of a claimant's subjective symptoms, "[t]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain **assertions** by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

6

> undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned **must consider other evidence in the record** to determine if the claimant's symptoms limit the ability to do work-related activities.

[Dkt. 12-2 at 22-23] (emphasis added). The ALJ also acknowledged that Claimant reported "chronic pain and to a lesser degree depressed mood and anxiety" "that have manifest into allegedly hearing occasional voices," as well as "pain primarily in her lower back and legs upon standing or walking for more than 10 minutes." *Id.* at 23. In fact, Claimant testified that she "can't stand for no longer than 10 minutes. If I stand for longer than 10 minutes, I'm in excruciating pain. I start swelling. I start shaking and . . . somebody has to help me sit down." *Id.* at 56. The ALJ also summarized the medical evidence of record and discussed the treatment history of the claimant. *Id*. at 23-26. In that section, the ALJ did not consider the Claimant's daily activities. However, in discussing Claimant's ability to adapt and manage oneself for "paragraph B" criteria in assessing Claimant's psychological impairments, the ALJ stated that Claimant "is capable of normal daily function, i.e. grooming, dressing, child care, cooking, cleaning, taking public transportation, shopping, going to church, etc." *Id.* at 21. The ALJ concluded with the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* at 23.

In support of his decision that Claimant's statements concerning her symptoms are not consistent with the medical evidence, the ALJ reasoned that

> The claimant's theory of disability is based on her subjective and rather vague allegations of pain. . . . The claimant appears to be confusing **disability** with discomfort. Disability requires more than the mere inability to work without pain. . . . The objective findings set out above do not support the notion that any of her conditions are severely limiting much less totally disabling. Therefore, I must carefully consider the claimant's treatment history to determine if clinical findings support her contentions of total disability. They do not.

*Id.* at 23-24 (emphasis in original). In addition to stating that the medical evidence and treatment history do not support Claimants contentions of disability, the ALJ noted that "[t]he evidence shows that claimant earned $861.50 in 2016 and $2,146.85 in 2017. The claimant's ability to earn the aforementioned amounts casts serious doubt on the alleged severity of her symptoms, if not the existence of the underlying impairments." *Id.* at 19. "Furthermore, a review of claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." *Id.* at 26. Finally, the ALJ concluded that Claimant's evaluation with consultative examiner Dr Freedman, in which she had a full range of motion and 5/5 muscle strength, was "not the examination of someone unable to sustain work at the sedentary exertional level." *Id.* at 25. Ultimately, the ALJ reasoned that "[w]hile I do not doubt the claimant has pain in her back and joints such allegations must be supported by clinical findings of functional limitations. . . . [G]eneral pain alone does not equate to disability because of its subjective nature." *Id.* at 25.

Despite the ALJ's proffered reasons, the ALJ ultimately failed to "give reasons for the weight given to the claimant's statements" sufficient to provide a "fair sense" of how the ALJ assessed the claimant's testimony. *See Hines v. Astrue*, 2011 WL 3812928, at *5 (S.D. Ind.

8

Aug. 25, 2011); *see also* SSR 16-3p. The Commissioner argues that "the ALJ more than minimally articulated his reasons, citing substantial record evidence as it applied to the relevant regulatory factors for assessing subjective complaints of pain and resulting limitations." [Dkt. 17 at 10.] Reciting the lengthy medical treatment of the Claimant, however, is not the same as explaining his reasoning for his decision. Further, as the Seventh Circuit has repeatedly stated, an ALJ "cannot disbelieve [the Claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006). Therefore, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations . . . and **justify the finding with specific reasons**." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (emphasis added). Although the ALJ briefly described Claimant's daily activities in another section of his opinion, "he did not, for example, explain whether [Claimant's] daily activities were consistent or inconsistent with the pain and limitations she claimed." *Id.* In fact, the only non-medical reasons the ALJ provided for not crediting Claimant's symptoms relates to her prior work history.

Yet, the ALJ failed to explain his conclusion that Claimant's ability to make a non-livable wage of $861.50 in 2016 and $2,146.85 in 2017 "casts serious doubt on the alleged severity of her symptoms." [Dkt. 12-2 at 19.] The ALJ did not discuss in any detail the nature of Claimant's employment during those two years or how her duties related to her claim of disability. "The fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be lax or altruistic." *Wilder v. Chater*, 64 F.3d 335, 337–38 (7th Cir. 1995). Moreover, "[p]ersisting in looking for employment even while claiming to suffer from a painful disability might simply indicate a

9

strong work ethic or overly-optimistic outlook rather than an exaggerated condition." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016); *see also Gerstner v. Berryhill*, 879 F.3d 257, 265 (7th Cir. 2018).

Next, in a somewhat contradictory reason from the one already discussed, the ALJ stated that Claimant "worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." *Id.* at 26. Once again, the ALJ did not provide any explanation for his conclusion. The record shows that in addition to Claimant's onset date of disability of January 31, 2016, in this case, she has also alleged an onset of disability of May 5, 2011, in a prior social security application. [Dkt. 12-3 at 8.] As such, the Claimant, whether correct or not, has thought of herself as disabled since 2011. Moreover, in the 2014 decision in the prior social security claim, the ALJ found that Claimant had "a good work history before the alleged onset date, as she worked as a cashier for 14 years, which is to her credit. . . She attended school regularly until the end of 2012." [Dkt. 12-3 at 13.] Interestingly, the ALJ did not confront this statement or explain how, given that finding in the prior case, Claimant's overall work history was sporadic.

Ultimately, the ALJ failed to explain what inconsistencies existed between Claimant's statements and the medical record. Instead, the opinion is filled with boilerplate language and conclusory statements. *See Bjornson v. Asture*, 671 F.3d 640, 645 (7th Cir. 2012) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)) ("'Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible.'"). Although an ALJ is not obligated to accept a Claimant's subjective statements at face value, the ALJ is required to provide a clear

10

rationale for discrediting Claimant's testimony regarding her subjective symptoms. The ALJ failed to do so here. These deficiencies in the ALJ's opinion necessitate remand.

**B. Residual Functional Capacity**

Claimant next argues that the ALJ failed to account for Claimant's need to elevate her legs to alleviate her lower extremity swelling in his RFC determination. [Dkt. 16 at 24] ("The ALJ never even acknowledged [Claimant's] difficulty with swelling, let alone provide any reasoning as to why her need to elevate her legs was omitted from the RFC.").

*1. Medical History*

To better understand Claimant's argument, it is helpful to review Claimant's medical history. Sprinkled throughout Claimant's medical history is both patient testimony and doctor observation of lower extremity swelling/edema. *See* [Dkt. 12-7 at 15, 40; Dkt. 12-9 at 89; Dkt. 12-10 at 59; 97, 99; Dkt. 12-13 at 40-45, 82, 85.] For example, on May 25, 2018, Claimant presented at the emergency room with lower left edema. [Dkt. 12-10 at 59-65.] At the time of intake, Claimant described a history of swelling in both legs "every night" that is typically alleviated when her legs are elevated. *Id* at 59-60. On July 2, 2019, Claimant continued to report intermittent edema in her legs and Dr. Parishurama Reddy noted positive edema. [Dkt. 12-13 at 40.] Reflecting on her medical history, Claimant testified at her hearing that "I can't stand for no longer than 10 minutes. If I stand for longer than 10 minutes, I'm in excruciating pain. I start swelling. I start shaking and . . . someone has to help me sit down so I can kind of relax a little bit." [Dkt. 12-2 at 56.] The ALJ and Claimant also had the following exchange at the hearing:

> Q: Okay, and I saw notes in the file about your legs and feet swelling. Is that still a problem?

11

A: Yes.

Q: And when do they swell. With certain activities or any rhyme or reason to it?

A: No, I could just be sitting down or I could walk downstairs and come back upstairs and I—it would be swelling.

Q: Okay. What do you do when your feet or your legs swell?

A: I have to elevate them.

Q: How do—how do you do that?

A: I have to put pillows or something up under my legs to try to elevate them.

[Dkt. 12-2 at 66-67.]

   2. *Legal Standard*

Chief among an ALJ's duties is to articulate a Claimant's RFC. In doing so, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Moore v. Colvin,* 743 F.3d 1118, 1123 (7th Cir. 2014); (citing *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)); *see also Godbey v. Apfel*, 238 F.3d 803, 807-08 (7th Cir. 2000). Of course, as long as the ALJ has created a logical bridge from the evidence to his conclusion, he need not address every snippet of information in the medical records that might possibly contradict the rest of the objective medical evidence. *Pepper v. Colvin*, 712 F.3d 351, 362-63 (7th Cir. 2013). Ultimately, the Court reviews the ALJ's decision deferentially, but cannot uphold the decision if it "fails to

mention highly pertinent evidence." *Parker v. Asture*, 597 F.3d 920, 921 (7th Cir. 2010); *see also Garfield v. Schweiker*, 732 F.2d 605, 609-10 (7th Cir. 1984); *Zblewski v. Schweiker*, 732 F.2d 75, 78-79 (7th Cir. 1984); *McNeil v. Califano*, 614 F.2d 142, 144-45 (7th Cir. 1980).

       *3. Discussion*

The ALJ's RFC assessment did not account for all of Claimant's limitations—specifically, it did not explain how Claimant's edema factored, if at all, into the assessment or how the accompanying need to elevate her legs would affect her ability to work. Not only can the Court find repeated mentions of Claimant's edema in the administrative record, Claimant, the ALJ, her attorney, and the VE all discussed Claimant's edema during the hearing. In fact, the VE testified that a person who needed to "elevate their legs parallel to the floor" could not work at the sedentary level. [Dkt. 12-2 at 75.] Although the ALJ does acknowledge Claimant's edema in reciting the objective medical evidence of record, *see* [Dkt. 12-2 at 25], the ALJ's failure to confront the VE testimony that a person who needed to elevate their legs is unable to work at the sedentary level is reversible error.

> [W]hen the ALJ fails to mention rejected evidence 'the court must send the case back, for it cannot tell whether the ALJ fulfilled his statutory duty' it considering all the evidence. . . . This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant.

*Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (quoting *Zblewski*, *732* F.2d at 79). The Commissioner's post hoc justification that "the record is completely devoid of any medical source opinion that Plaintiff needed to elevate her leg" is not sufficient. [Dkt. 17 at 14.] The ALJ must confront all of the relevant medical evidence himself. This error also necessitates a remand.

13

## C. Paragraph B Criteria

Claimant also argues that the ALJ erred as a matter of law because he failed to impose function-by-function limitations commensurate with the ratings of severity he assigned when he evaluated the "paragraph B" criteria at step 2. [Dkt. 16 at 28.] Specifically, Claimant argues that the ALJ failed to articulate how he arrived at his conclusion that Claimant could sustain her concentration and pace for at least two-hour increments. *Id.*

The ALJ found Claimant to have no limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; moderate[4] difficulties with regard to concentration, persistence or maintaining pace; and mild limitations adapting or managing herself. [Dkt. 12-2 at 21.] Therefore, "[b]ecause the claimant's mental impairments did not cause at least two 'marked' limitations or one 'extreme' limitation," the ALJ found "the 'paragraph B' criteria are not satisfied." *Id.* at 22. Subsequently, in making his RFC determination, the ALJ found that Claimant could

---

[4] The Commissioner incorrectly and misleadingly argues that "ample recent analogous seventh Circuit case law" demonstrates "that substantial evidence supported the ALJ's mental RFC assessment." [Dkt. 17 at 15.] For example, the commissioner cites to *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). However, in that case the Claimant only had a "**mild** mental functional impairment" and "according to the medical evidence, his impairment surface[d] only when he [was] with other people or in a crowd" and Claimant "did not testify about restrictions in his capabilities related to concentration, persistence, or pace defects, and the medical record does not support any." *Id.* at 497-98 (emphasis added). Here, Claimant testified about her difficulties with concentration, [Dkt. 12-2 at 69-70], and suffers from a **moderate,** not mild, limitation. The other cases the Commissioner cites are not persuasive and unpublished. *Dudley v. Saul*, 773 F. App'x 838 (7th Cir. 2019) (finding the ALJ's RFC limited Claimant to work requiring the exercise of only simple judgment); *Urbanek v. Saul*, 796 F. App'x 910 (7th Cir. 2019) (finding that an impartial licensed psychologist testified at the hearing and the ALJ used the doctor's testimony to provide the VE with numerous limitations related to concentration, persistence, and pace); *Pytlewski v. Saul*, 791 F. App'x 611 (7th Cir. 2019) (finding the ALJ's hypothetical accommodated his stress-related concentration problems).

perform moderately complex work that can be learned in 90 days or less and is able to sustain concentration and pace in a minimum of two (2) hour increments. The Claimant is capable of responding appropriately to supervision and to coworkers in usual work situations and can deal with changes in a routine work setting that require no more than occasional interactions with coworkers and the public.

*Id.* at 22. The ALJ also reasoned that "Dr. Nihalani's conclusions [that] the claimant would be unable to sustain full-time work is conclusory and not supported by her general mild findings. Moreover, the claimant['s] alleged depression is longstanding and was not preclusive of her ability to work prior to the alleged onset of disability date." *Id.* at 26.

However, nowhere in the ALJ's decision does he make it clear how he arrived at the two-hour interval figure. No state agency doctor or any other doctor offered this opinion. Absent support in the record for the two-hour interval, the "ALJ impermissibly 'formulated [his] own independent medical opinion regarding the effects (or lack of effects) of [the claimant's] moderate difficulties of concentration, persistence, or pace.'" *Goodman v. Saul*, 2020 WL 3619938, at *9 (N.D. Ind. Jun. 10, 2020) (quoting *Warren v. Colvin*, 2013 WL 1196603, at *5 (N.D. Ill. 2013); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *see also Brian P. v. Saul,* 2020 WL 231081, at *4 (N.D. Ill. Jan. 15, 2020) ("The ALJ did not explain how any evidence in the record translates into a finding that Brian can concentrate and persist for any amount of time at a normal pace, let alone for two-hour intervals. . . . Thus, there is no logical bridge between the evidence and the ALJ's conclusion that Brian could persist in simple, routine activities in two-hour intervals, with adequate pace and perseverance." ); *Kelly v. Colvin*, 2015 WL 1930035, at *6 (S.D. Ill. Apr. 28, 2015) ("That being said, the RFC assessment is still fatally flawed because there is a complete lack of evidence and analysis supporting the determination that plaintiff could stay focused for two hours at a time."); *Simpson v. Astrue,* 2013 WL 1294517, at

*4 (S.D. Ind. Mar. 28, 2013) ("The 'ALJ's hypothetical not only omitted reference to Plaintiff's moderate difficulties with concentration, persistence, or pace, but implied that Plaintiff indeed had the capability to concentrate for up to two hours. Thus, because the ALJ's hypothetical did not supply the vocational expert with adequate information regarding Plaintiff's limitations, the expert was unable to determine whether there were jobs that Plaintiff could perform."). Indeed, as the court observed in *Goodman*,

> [T]he Commissioner has in another recent case indicated that normal breaks occur every two hours during a regular 8-hour workday. *Braithwaite v. Commissioner of Social Security*, 2011 WL 1253395, at *5 n. 4 (E.D. Cal. March 31, 2011). . . . It does not seem to make sense to conclude, as the ALJ apparently did here, that an individual with moderate limitations in the ability to maintain attention and concentration would require the same frequency of breaks as a typical worker.

*Goodman*, 2020 WL 3619938, at *6. (citations omitted).

Moreover, "the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work." *Lanigan v. Berryhill*, 865 F.3d 558, 565–66 (7th Cir. 2017). Therefore, it is important that the ALJ inform the VE of Claimant's limitations in concentration, persistence, or pace. See *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009); *Young v. Barnhart*, 362 F.3d 995, 1004 (7th Cir. 2004); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

> [T]he hypothetical the ALJ posed to the VE did not direct the expert to consider problems with concentration, persistence, and pace, which is the hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the absence of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question.

*Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019). Here, the ALJ told the VE to hypothesize a person who is able to concentrate in two-hour intervals and complete moderately complex work. [Dkt. 12-2 at 74.] If the ALJ believed those abilities were consistent with Claimant's moderate limitations in concentration, persistence, or pace, he should have explicitly explained that conclusion in his opinion.

The ALJ's minimal rational for his RFC is not enough to overcome the above-mentioned deficiencies. On remand, the ALJ shall reconsider the evidence regarding Claimant's mental impairments and their impact on her RFC.

### D. Availability of Jobs in the National Economy

Finally, Claimant argues that the ALJ failed to adequately question the VE regarding his testimony concerning the availability of the jobs in the national economy. [Dkt. 16 at 32.] During the hearing, the VE testified that an individual capable of performing Claimant's assessed RFC could work as a microfilm document preparer (39,000 jobs in the national economy); dowel inspector (1,200 jobs in the national economy); and weight tester (1,500 jobs in the national economy). [Dkt. 12-2 at 28.] These jobs all come from the Dictionary of Occupational Titles ("DOT").

Having found it necessary to remand this case based on the above-mentioned issues, the Court need not address this argument. On remand, the ALJ must ensure that the determination at step 5 is based on sufficient evidence and that there are, in fact, a "significant number of jobs" that Claimant can perform. *See* 20 C.F.R. §§ 404.1566(b), 416.966(b).

The Court notes, however, that it is troubled by the fact that neither the ALJ nor Claimant's counsel questioned the VE's assertion that there were 39,000 microfilm document preparer jobs in 2019, particularly in light of Seventh Circuit precedent noting that it is

17

"skeptical, for example, about how many jobs exist today that involve maintaining library records on microfilm." *Hill v. Colvin*, 807 F.3d 862, 869 n.10 (7th Cir. 2015); *see also Gulley v. Berryhill*, 2019 WL 668836, at *4 (E.D. Wisc. Feb. 19, 2019) ("Although microfilming might not be completely obsolete, it seems fair to suspect it has changed dramatically since 1977 or even 1991 given the shift to digital storage and advances in scanning technology.") (citation omitted). An ALJ must not uncritically accepting a VE's testimony. *See Dimmett v. Colvin*, 816 F.3d 486, 489 (7th Cir. 2016). "If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs." *Herrmann v. Colvin,* 772 F.3d 1110, 1113 (7th Cir. 2014).

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 28 JUN 2021

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana


Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.